## Case No. 15,717.

### UNITED STATES v. MANN.

[1 Gall. 3.] [1]

Circuit Court, D. New Hampshire. May Term, 1812.

EMBARGO — HOW COGNIZABLE — IN WHAT COURT.

The exportation of goods to a foreign country, contrary to the act of 9th January, 1809, c. 72, § 1 [2 Story's Laws, 1101 (2 Stat. 506, c. 5)], is a misdemeanor, of which the circuit court has original cognizance; and it seems the prosecution may well be by information.

[Cited in U. S. v. New Bedford Bridge, Case No. 15,867; U. S. v. Maxwell, Id. 15,750; Ex parte Wilson, 114 U. S. 425, 5 Sup. Ct. 939.]

Information for a misdemeanor [against John Mann] for loading five tons of pearl ashes. &c. in a sleigh, with intent to export the same to Canada, contrary to the first section of Act 9th Jan. 1809, c. 72 (9 Laws U. S. 185 [2 Stat. 506]). Two questions were made: 1. Whether the circuit court had original jurisdiction of the offence. 2. If so, whether an information lay.

Mr. Mason, for defendant, contended that this was substantially a suit for a penalty, and that by the judicial act of 24th of September, 1789, c. 20 [1 Stat. 73], exclusive jurisdiction was given to the district court of all suits for penalties and forfeitures. If the doctrine were held otherwise in the present case, the district court would be completely ousted of its exclusive jurisdiction. For if the United States chose to proceed by way of debt for the penalty, the district court would have jurisdiction: if by information, then the circuit court would have jurisdiction in the same case. It could not be correct to contend, that the jurisdiction of the court depended altogether on the mode of prosecution.

Mr. Humphreys, U. S. Dist. Atty., contended, that although it was true, that the judicial act of 1789 gave the district court exclusive jurisdiction of suits for penalties and forfeitures, yet it was also true, that the present was not a suit for a penalty or forfeiture, but a criminal proceeding. The act had declared it a high misdemeanor; and if so, it clearly came within the cognizance of the circuit court, as that court, by the judicial act of 1789, had "cognizance of all offences cognizable under the authority of the United States." As to the second point, the mode of prosecution is founded on the 12th section of the act of 9th January, 1809, c. 72 [2 Stat. 506], which provides, that all penalties and forfeitures under that act might be recovered by an action of debt, or by information or indictment; that this language was to be construed to apply distributively, and that an information properly lay in all cases of misdemeanors.

---

## Case No. 15,718.

### UNITED STATES v. MANN.

[1 Gall. 177.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1812.

EMBARGO—REPEAL—CIRCUIT COURT.

1. An offence punishable by fine and imprisonment under Embargo Act Jan. 9, 1809, c. 72 [2 Story's Laws, 1101 (2 Stat. 506, c. 5)], was not saved from repeal by the saving clause of the 2d section of the act of June 28, 1809, c. 9 [2 Stat. 550].

[Cited in Ex parte Marquand, Case No. 9,100; U. S. v. Barr, Id. 14,527.]

[Cited in Trustees of Dartmouth College v. Woodward, 1 N. H. 133; Lewis v. Foster, Id. 62; Woart v. Winnick, 3 N. H. 481.]

2. The circuit court of the United States has jurisdiction over such an offence.

[Cited in U. S. v. New Bedford Bridge, Case No. 15,867.]

[Cited in Dow v. Norris, 4 N. H. 20.]

---

[This was an information for a misdemeanor against John Mann. For the prior proceeding, see Case No. 15,717.]

The District Attorney and Jeremiah Smith, for the United States.

Jeremiah Mason, for defendant.

Before STORY, Circuit Justice, and SHERBURNE, District Judge.

STORY, Circuit Justice. This is an information filed by the United States against the defendant, for an alleged violation of the first section of the act of January 9, 1809, c. 72 [2 Story's Laws, 1101 (2 Stat. 506, c. 5)], commonly called the embargo enforcing act. The counsel for the defendant has moved the court to stay all further proceedings on the information upon two grounds: 1. That the circuit court has no jurisdiction over the offence. 2. That if the court has jurisdiction, yet the information can no longer be sustained, inasmuch as the act, on which it is founded, so far as it creates and punishes the supposed offence, has been repealed.

On the first point the learned counsel has contended: That the present is a suit for a penalty or forfeiture, and by the judicial act of September 24, 1789, § 9 [1 Stat. 76]. the district court has "exclusive original jurisdiction of all suits for penalties and forfeitures incurred under the laws of the United States." If this argument be correct, the jurisdiction of this court is unquestionably ousted. But before we come to such a result, it will be necessary to examine with attention the various provisions of law on this subject. It may be conceded. without hesitation, that the words "penalty and forfeiture" are often used in a broad sense, as including every description of punishments applied to public crimes. In this sense they are often found in elementary jurists of approved reputation, and the authorities cited fully support the position. 4 Bl. Comm. p. 380, note 4; Id. 387; 2 Wood. Lect. 561. It may also be conceded, that the word "suit" is, in an equally enlarged sense, sometimes applied as well to criminal, as civil prosecutions. It is so applied in the close of the 9th section of the judicial act of 1789, c. 20, when speaking of suits against consuls, &c. it excepts suits for offences beyond the cognizance of the district court. But it must be admitted, that all these words are very often used both in statutes and in elementary treatises in a more restrained and narrow sense. The word "suit" is frequently, if not ordinarily, confined to civil proceedings, the word "penalty" to pecuniary mulcts, and the word "forfeiture" to forfeitures in rem. It cannot be necessary to cite examples. Sometimes indeed "penalties" and "forfeitures" are used as synonymous, and inasmuch as the same sentence had already provided for forfeitures in rem, or seizures it would seem that such was their meaning in this clause. What then is the sense in which the words "suits for pen-

alties and forfeitures" are used in the section under consideration? It is a sound rule in the construction of statutes, that they are to be construed according to the subject matter and context, and in such a manner, as that effect may be given to every part of the language employed; and especially are contradiction and absurdity to be avoided, if possible. In the preceding part of the 9th section, the criminal jurisdiction of the district court is declared to be limited to offences, "where no other punishment than whipping not exceeding thirty stripes, a fine not exceeding $100, or a term of imprisonment not exceeding six months, is to be inflicted." It is clear, that the legislature had no intention to include within the description of "suits for penalties and forfeitures," crimes punishable in the manner above stated; for it would be absurd to suppose, that it should give a jurisdiction over all offences to an unlimited extent, and yet in the same breath confine it to a very narrow and shallow boundary; that it should declare, that the court might entertain an exclusive cognizance of all suits for penalties, and yet should not touch a suit for penalty exceeding $100. The absurdity would be still more glaring, if we consider, that by the judicial act of 1789, § 11, the circuit court has exclusive cognizance of all crimes and offences cognizable under the authority of the United States, with few exceptions, and has concurrent cognizance of those, which are cognizable by the district court. It would be quite impossible to contend, that an exclusive and a concurrent jurisdiction should exist at the same time in different courts. It is then incontrovertible. that suits for penalties and forfeitures do not include crimes and offences punishable by the district court, and if so, neither can they include such as are punishable by the circuit court. The words then must be restrained to such penalties and forfeitures, as may be sued for in a civil action; as, for instance, an action of debt, or an information of debt. For I take it to be clear, that an information of debt in the exchequer for a penalty. is as much a civil proceeding, as an action of debt. Attorney General v. Bowman. 2 Bos. & P. 532, note. Nor would it be any objection to this construction, even admitting it to be true, that in this manner the jurisdiction of the court would depend, not upon the subject matter, but upon the mode of prosecution. For without question all infractions of public laws are offences; and it is the mode of prosecution, and not the nature of the prohibitions, which ordinarily distinguishes penal statutes from criminal statutes. It is laid down as law in Rex v. Malland, 2 Strange, 828, that where a pecuniary penalty is annexed to an offence, and no mode of prosecution is prescribed, an indictment does not lie thereon; but only an information of debt in the exchequer. Yet it seems, admitted. that the court of exchequer has no criminal jurisdiction; and therefore, if the offence had been simply prohibited without

annexing a penalty, the king's bench, and not the exchequer, would have had jurisdiction to punish it. Nor it is very unusual, to let the jurisdiction of the court rest on the mode of prosecution, and not on the subject matter. Shipman v. Henbest, 4 Term R. 109.

The inquiry, then, in the present case, is narrowed to the consideration, whether the offence be a public crime, punishable on conviction by the court, or a penalty exclusively to be prosecuted in a civil action. The language of the first section of the act of 1809, c. 72, applicable to this point declares "that the offenders, their aiders and abettors, shall upon conviction be adjudged guilty of a high misdemeanor, and fined a sum by the court before which a conviction is had, equal to four times the value," &c. For my own part, I cannot perceive any ground, upon which a doubt can fairly rest, that the offence thus described was intended to be punished by the court in a criminal proceeding. It declares that the illegal act shall be "adjudged a high misdemeanor," the very language ordinarily employed by the legislature, to designate an offence punishable in a criminal form. It alludes to the "conviction" of the offenders, a mode of expression peculiarly adapted to designate a criminal judgment, and it states, that a "fine" is to be imposed by the court, which is almost invariably applied to the act of the court in pronouncing a criminal sentence for a pecuniary forfeiture. I am therefore perfectly satisfied, that the legislature intended to create an offence, which should be punished by a criminal prosecution. Nor does the 12th section of the act in any degree shake this construction. It declares, that all penalties and forfeitures incurred by force of the act, "unless therein before otherwise directed." &c. may be prosecuted, sued for, and recovered, by action of debt, or by indictment or information, &c. Now, admitting that this offence would be included within the general description of "a penalty or forfeiture," I am satisfied that it is within the exception. The defendant, therefore, can take nothing by this objection, even if the ground were open to the consideration of this court. But I consider this point as fully settled by the supreme court, in the case of U. S. v. Tyler [7 Cranch (11 U. S.) 285], at the last February term. That was an indictment upon the same clause of the act, on which the jury found the defendant guilty, and also found by their verdict the value of the goods exported. but by mistake stated them as pot ashes, whereas the goods charged in the indictment were pearl ashes. The court below were divided as to the question, whether the verdict was sufficiently certain, and the supreme court adjudged it sufficient, and that judgment ought to be for the United States. The court would not have given this direction, unless they were satisfied that an indictment lay, and that the fine was to be imposed by the court, and not found by the jury as a penalty.

The second point has presented more difficulty. By the 19th section of the act of March 1, 1809 [2 Stat. 533], it is enacted, "that the act laying an embargo on all ships and vessels in the ports and harbors of the United States, and the several acts supplementary thereto, shall be and the same are hereby repealed from and after the end of the next session of congress." By this clause (had it stood alone), the whole embargo acts, together with all their penalties, forfeitures, fines and punishments, would after the next session have been swept away, unless they had passed in rem judicatam. Of course, every prosecution therefor depending before any court would have been quashed. Miller's Case, 1 W. Bl. 451; Yeaton v. U. S., 5 Cranch [9 U. S.] 281. But at the then next session, the legislature saw fit to interpose, and in the 2d section. Act June 28, 1809, c. 9, inserted a saving clause, as follows: "Provided that all the penalties and forfeitures, which may have been incurred, or shall hereafter be incurred, on account of any infraction of the act laying an embargo, &c. or of any of the acts supplementary thereto, or of the act to enforce, &c. the act laying an embargo, &c. or of any of the provisions of the act to interdict the commercial intercourse between the United States and Great Britain and France, and their dependencies, and for other purposes, shall after the expiration of any of the said acts, or of any provision thereof, be recovered and distributed in like manner, as if the said acts and every provision thereof had continued in full force and virtue." It is contended, on the part of the defendant, that this proviso saves such penalties and forfeitures only, as are recoverable by civil process; and on the part of the United States it is contended, that it saves all offences of every name and nature created by the enumerated acts. This question, like the former, can be decided only by a careful attention to the language of the legislature.

In examining the various embargo and non-intercourse acts, three instances only are found, in which (technically speaking) a crime is created, and punished on conviction by the court. The first is in the section of the act of 9th January, 1809, on which this information is founded; the next is in the 7th section of the same act, where the false swearing stated therein, is declared to subject the party to the pains and penalties of perjury. The third is in the 2d section of the act of 1st March, 1809, where any illegal intercourse with any public ship of Great Britain or France is declared to subject the offender to a forfeiture, not exceeding ten thousand dollars, nor less than one hundred dollars; and to imprisonment, not less than one month, nor more than one year. In all other cases (and the acts are crowded with them) the offences are punishable by pecuniary penalties only. Each of the embargo and non-intercourse acts contains a provision for the mitigation and remission of the penalties and for-

feitures, according to Act March 3, 1797, c. 67 [1 Story's Laws, 458; 1 Stat. 506, c. 13], and also for the distribution of the same penalties and forfeitures (except in cases of seizure by the navy) according to the revenue act of March 2, 1799, c. 128 [1 Story's Laws 573 (1 Stat. 627, c. 22)]. See Act Jan. 9, 1808, § 6 [2 Stat. 454]; Act March 12, 1808, § 6 [Id. 475]; Act April 25, 1808, § 14 [Id. 502]; Act Jan. 9, 1809, § 14 [Id. 510]; Act March 1, 1809, § 18 [Id. 532]; Act June 28, 1809, § 4 [Id. 551]. By the former acts, the recovery of these penalties and forfeitures seems to be prescribed by an action or information of debt; and by the latter, by an action of debt, or by information or indictment. On recurring to the act of March 3, 1799, § 91, and the act of March 3, 1797, § 1, the mitigation or remission in the one case, and the distribution in the other, is applied to "fines, penalties and forfeitures," which indicates, at least in the mind of the legislature, a distinction between fines and penalties. This distinction is further apparent by the 89th section of the act of March 2, 1799, where it is enacted, that all penalties accruing by that act, should be sued for and recovered in the name of the United States, but fines are silently left to be imposed by the court in the exercise of its ordinary jurisdiction. The same distinction would seem to result from the language of the 14th section of the act of January 9, 1809, where a mode of recovery is expressly provided for "penalties and forfeitures," but is dropped apparently ex industria, as to "fines;" although in the close of the section the legislature have made a provision as to the testimony applicable to trials for "fines," as well as for "penalties and forfeitures." But I do not rely upon this distinction, because I think the true construction of the saving clause in question, must depend less upon the exact definition of a single word, than on the general scope of the language. In the first place, it will not I presume be contended, that the clause saves any crimes punishable by any other than pecuniary mulcts. For it could never be gravely presumed, that the legislature intended to distribute the punishment of imprisonment or of the pillory among those, whom it esteemed its own favorites. Such a distribution might gratify an offender, and perhaps alleviate his burthens, but could with no decorum or propriety be admitted to enter into legislative deliberations. It would be so absurd, that human ingenuity would be paralysed in attempting to support it. The crimes of illegal intercourse with foreign ships of war, and of false swearing within the acts, therefore, were without question repealed, and no prosecution could be sustained therefor. If this be true, I would ask, why not the crime of illegal exportation, upon which the present prosecution is founded? How can the case of a crime punishable by fine and partly by imprisonment be distinguished from that of a crime punishable wholly by fine? If the words "penalties and forfei-

tures" are used in an enlarged sense, they comprehend both; if in a restricted sense, they include neither. And indeed the learned counsel for the United States has very correctly argued the question upon this footing. He admitted, that the information could not be sustained, unless upon the construction, that all crimes were within the saving proviso. A fine is a punishment imposed by the court, as much as imprisonment, and in the same manner; and it would be difficult to contend, that when it constituted the whole punishment, it was saved and distributable; and when a part only, it was lost and repealed. On the best examination which I have been able to make, it has been difficult to resist the impression, that uniformly, through the whole acts in question, the words "penalties and forfeitures," are used in a restrained sense, and applied to such, as might be recovered in a civil prosecution, and of course such as would be within the cognizance of the district court. The 14th section of the very act, on which this information is founded, gives the election to prosecute by action of debt, or by information, or indictment. Now I think it would be difficult to argue, that the legislature could intend to overturn the ordinary distinctions in proceedings before its legal tribunals. It would certainly be a novelty, to attempt to bring an action of debt in order to convict an offender of a high misdemeanor, and to enable the court to impose a punishment by fine. In debt the jury would find the sum due; and yet by the act it is to be found and imposed by the court. In debt, the judgment is for a sum certain, and process of execution issues. But where a fine is imposed, imprisonment in case of non-payment, is a part of the judgment. The language too of the saving clause, is strictly applicable to civil proceedings. The penalties and forfeitures are to be "recovered and distributed." It is true, that these words may be, and sometimes are, applied to "fines," but usually they are confined to civil proceedings, where the party has a vested right, the recovery of which is sought and obtained in the suit. If then the language of the proviso be satisfied, if no intent to the contrary be apparent, why, let me ask, should these words be strained to embrace the only case, in which a criminal proceeding can be held to be reserved? There might be very good reason to reserve penalties and forfeitures, because informers or other persons might have a vested interest therein: but the same reason would not apply to a criminal proceeding, where no interest could vest until the fine was imposed, and where the legislature seemed to contemplate a bounty only to the informers after the whole was received, to their own use. It is of great consequence to preserve the distinction between penalties and forfeitures, and pains and punishments. The former may be remitted by the secretary of the treasury, or others who may be vested with the authority by law, because the claim

sounds civiliter. But the constitution of the United States has confided to the president the power of pardoning offences against the United States (article 2), and consequently the remission of pains and punishments, sounding criminaliter, belongs to the executive.

On the whole, I am of opinion, that it was not the intention of the legislature to save offences, which could be punishable by the court only in a criminal form; and that "penalties and forfeitures" must be restrained to such as might be recoverable by civil process in personam et in rem.

The chief difficulty, which has pressed on my mind, has been the case of U. S. v. Tyler [7 Cranch (11 U. S.) 285], where the indictment ought upon the principles of the present decision to have been quashed. But it will be recollected, that that case arose on a certificate of division of the circuit court, on a single point, and was submitted without argument. It is within my own recollection, that the present objection was not moved or considered; and I cannot think that a point, which was neither considered nor argued, and passed sub silentio, ought to outweigh the force of deliberate arguments. I regret, that the language of the legislature is not more comprehensive and definite; and above all, that it should leave a question of this nature to mere unassisted construction. But we cannot avoid the embarrassment. We cannot assume a jurisdiction to moderate the promulgated sentence of the legislature, neither ought we to increase its severity by enlarging doubtful expressions. The present act is highly penal, and affects the citizens with unusual forfeitures. It is a principle grown hoary in age and wisdom, that penal statutes are to be construed strictly, and criminal statutes to be examined with a favorable regard to the accused. I cannot feel at liberty, with this principle before me, to impose a forfeiture. where the legislature has not plainly spoken its will to that effect; and I will not be the first judge, sitting in this seat, to strain a proviso against the citizen, beyond the fair import of its expressions. As the district judge concurs in this opinion, the motion must prevail. Information dismissed.